UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| TERESA COMBS, Individually and For Others Similarly Situated,<br><br>v.<br><br>DOYLE LAND SERVICES, INC. | **Case No.** _____<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Teresa Combs brings this class and collective action lawsuit to recover unpaid overtime wages and other damages from Doyle Land Services, Inc.

2. Doyle employed Combs as one of its Day Rate Workers (defined below) in Illinois.

3. Doyle pays Combs and its other Day Rate Workers by the day.

4. Combs and the other Day Rate Workers regularly work more than 40 hours a week.

5. But Doyle does not pay Combs and its other Day Rate Workers overtime.

6. Instead, Doyle pays Combs and its other Day Rate Workers a flat amount for each day worked, regardless of the total number of hours they worked in a workweek (a "day rate").

7. Doyle pays Combs and its other Day Rate Workers under its uniform day rate pay scheme regardless of any individualized factors.

8. Doyle's uniform day rate pay scheme violates the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") by depriving Combs and the other Day Rate Workers of overtime when they work more than 40 hours in a week.

**JURISDICTION & VENUE**

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

1

10. This Court has supplemental jurisdiction of the state-law subclass claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Doyle based on Doyle's substantial contacts with, and conduct direct towards, Illinois, including employing Day Rate Workers (like Combs) in Illinois.

12. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

13. Specifically, Combs worked for Doyle in Madison County, Illinois, which is in this District and Division.

## PARTIES

14. From approximately January 2022 until April 2024, Doyle employed Combs as a Title Agent in Illinois.

15. Throughout her employment, Doyle paid Combs according to its illegal day rate pay scheme.

16. Combs' written consent is attached as **Exhibit 1**.

17. Combs brings this class and collective action on behalf of herself and all other similarly situated employees who Doyle paid under its illegal day rate pay scheme.

18. Doyle paid each of these employees a flat amount for each day worked, regardless of the total number of hours they worked in a workweek.

19. As a result, Doyle fails to pay these employees overtime when they work more than 40 hours in a week in violation of the FLSA and IMWL.

20. The FLSA Collective of similarly situated employees is defined as:

> **All Doyle employees who were paid day rate with no overtime at any time during the past 3 years (the "FLSA Collective Members").**

21. Combs also seeks to represent a class under the IMWL pursuant to FED. R. CIV. P. 23.

22. The Illinois Class of similarly situated employees is defined as:

**All Doyle employees in Illinois who were paid day rate with no overtime at any time during the past 3 years (the "Illinois Class Members").**

23. The FLSA Collective Members and the Illinois Class Members are collectively referred to as the "Day Rate Workers."

24. Doyle is a Louisiana corporation headquartered in New Orleans.

25. Doyle can be served through its registered agent: **CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604**.

## FLSA COVERAGE

26. At all relevant times, Doyle was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27. At all relevant times, Doyle was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

28. At all relevant times, Doyle was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, pens, paper, etc.—that have been moved in or produced for commerce.

29. At all relevant times, Doyle has had an annual gross volume of sales made or business done of $1,000,000 each year.

30. At all relevant times, Combs and the other Day Rate Workers were Doyle's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

31. At all relevant times, Combs and the other Day Rate Workers were engaged in commerce or in the production of goods for commerce.

32. Doyle uniformly paid Combs and its other Day Rate Workers according to its illegal day rate pay scheme.

33. Doyle applied its illegal day rate pay scheme to its Day Rate Workers regardless of any alleged individualized factors, such as specific job title or geographic location.

34. By paying Combs and its other Day Rate Workers a day rate, Doyle did not pay them overtime when they worked more than 40 hours in a workweek.

35. Doyle's uniform day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

36. Doyle bills itself as "a professional land services firm whose focus is providing quality land services in support of the Energy Industry throughout the United States of America."[1]

37. To meet its business objectives, Doyle hires workers, like Combs and the other Day Rate Workers, to provide the right of way land services it markets to its clients.

38. Doyle uniformly pays these employees (including Combs and the other Day Rate Workers) according to its illegal day rate pay scheme.

39. While exact job titles and precise job duties may differ, these employees are subjected to the same or similar illegal pay practice—Doyle's day rate pay scheme—for similar work.

40. For example, Combs worked for Doyle as a Title Agent in Illinois from approximately January 2022 until April 2024.

---

[1] https://www.doyleland.com/ (last visited April 12, 2024).

41.     As a Title Agent, Combs' primary duties included researching, reviewing, and compiling property, mineral, title, and other land ownership records for Doyle's clients.

42.     Throughout her employment, Combs typically worked 8 hours a day for 6 days a week (or 48 hours a week).

43.     Combs worked in accordance with the schedule set by Doyle.

44.     Despite knowing Combs regularly worked overtime, Doyle did not pay her overtime.

45.     Instead, Doyle paid Combs under its illegal day rate pay scheme.

46.     Specifically, Doyle paid Combs approximately $325 each day she actually worked, regardless of the number of hours she worked that day (or that week) and failed to pay her overtime when she worked over 40 hours in a week in violation of the FLSA and IMWL:

| BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS |
|---|---|---|---|---|---|
| | Salary Day Days | 13.00 | 325.00 | 4225.00 | 240.00 |
| | Total Hours | | | | |
| | Gross Earnings | | | 4225.00 | |
| | Total Hrs Worked | | | | |
| | Misc Expense Rei | | | 135.95 | |
| | REIMB & OTHER PAYMENTS | | | 135.95 | |

47.     Doyle pays its other Day Rate Workers according to the same illegal day rate pay scheme it imposed on Combs.

48.     That is, just as with Combs, Doyle pays its other Day Rate Workers on a day rate basis and fails to pay them overtime when they work more than 40 hours in a week.

49.     Like Combs, the other Day Rate Workers typically work 8 hours a day for 6 days a week (or 48 hours a week).

50.     And like Combs, the other Day Rate Workers work in accordance with the schedule set by Doyle.

51. Despite knowing its Day Rate Workers regularly work overtime, Doyle does not pay them overtime wages.

52. Instead, Doyle pays its Day Rate Workers a flat amount for each day worked, regardless of the number of hours they worked that day (or that week) and fails to pay them overtime when they work more than 40 hours in a week in violation of the FLSA and IMWL.

53. Doyle never paid Combs and the other Day Rate Workers on a "salary basis."

54. Doyle does not pay Combs and the other Day Rate Workers a guaranteed salary that is not subject to reduction based on the quality or quantity worked.

55. If Combs and the other Day Rate Workers do not work, they do not get paid.

56. Rather, Doyle only pays Combs and the other Day Rate Workers their set day rates for the actual days they work.

57. Combs' and the other Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

58. Thus, Doyle never paid Combs and its other Day Rate Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

59. Because Doyle fails to pay Combs and its other Day Rate Workers on a "salary basis," they are all non-exempt employees entitled to overtime.

60. But Doyle does not pay Combs and its other Day Rate Workers overtime when they work more than 40 hours in a week in violation of the FLSA and IMWL.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

61. Combs incorporates all other paragraphs by reference.

62. Like Combs, the other Day Rate Workers are victimized by Doyle's illegal day rate pay scheme.

63. Other Day Rate Workers worked with Combs and indicated they were paid in the same manner, performed similar work, and were subject to Doyle's same illegal day rate pay scheme.

64. Based on her experience with Doyle, Combs is aware Doyle's illegal day rate pay scheme was imposed on the other Day Rate Workers.

65. The Day Rate Workers are similarly situated in the most relevant respects.

66. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

67. Any relevant exemption defenses would require Doyle to pay the Day Rate Workers on a "salary basis."

68. Because Doyle fails the "salary basis" test with respect to the Day Rate Workers, the specific job duties performed by those employees are largely irrelevant.

69. The only *relevant* inquiry is whether the Day Rate Workers were paid a day rate with no overtime wages when they worked more than 40 hours in a week (which, by definition, they were).

70. Therefore, the specific job titles or precise job locations of the various Day Rate Workers do not prevent class or collective treatment.

71. Rather, Doyle's uniform day rate pay scheme renders Combs and the other Day Rate Workers similarly situated for the purposes of determining their right to overtime pay.

72. Doyle's records reflect the number of days and/or hours the Day Rate Workers worked each week.

73. Doyle's records also show it paid the Day Rate Workers a day rate with no overtime wages when they worked more than 40 hours in a week.

74. The backwages owed to Combs and the other Day Rate Workers can therefore be calculated using the same formula applied to the same records.

75. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Doyle's records, and there is no detraction from the common nucleus of liability facts.

76. Therefore, the issue of damages does not preclude class or collective treatment.

77. Combs' experiences are therefore typical of the experiences of the other Day Rate Workers.

78. Combs has no interest contrary to, or in conflict with, the other Day Rate Workers that would prevent class or collective treatment.

79. Like each Day Rate Worker, Combs has an interest in obtaining the unpaid wages owed under federal and Illinois law.

80. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

81. Absent this class and collective action, many Day Rate Workers will not obtain redress for their injuries, and Doyle will reap the unjust benefits of violating the FLSA and IMWL.

82. Further, even if some of the Day Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

83. Indeed, the multiplicity of actions would create a hardship to the Day Rate Workers, the Court, and Doyle.

84. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Workers' claims.

85. The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

86. Among the common questions of law and fact are:

    a. Whether Doyle's day rate pay scheme deprived the Day Rate Workers of overtime when they worked more than 40 hours in a week in violation of the FLSA and IMWL;

    b. Whether Doyle's decision to misclassify its Day Rate Workers as exempt was made in good faith;

    c. Whether Doyle's decision not to pay its Day Rate Workers overtime was made in good faith; and

    d. Whether Doyle's FLSA violations were willful.

87. Combs knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

88. Doyle's illegal day rate pay scheme deprived Combs and the other Day Rate Workers of the overtime wages they are owed under federal and Illinois law.

89. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

90. The Day Rate Workers are known to Doyle and can be readily identified and located through Doyle's business and personnel records.

### DOYLE'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

91. Combs incorporates all other paragraphs by reference.

92. Doyle knew it was subject to the FLSA's overtime provisions.

93. Doyle knew the FLSA required it to pay non-exempt employees, including the Day Rate Workers, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

94. Doyle knew each Day Rate Worker worked more than 40 hours in at least one workweek during the relevant period.

95. Doyle knew it paid its Day Rate Workers on a daily basis.

96. Doyle knew it paid its Day Rate Workers a day rate (with no overtime for their hours worked over 40 in a week).

97. Doyle knew it did not pay its Day Rate Workers on a "salary basis."

98. Doyle knew it did not pay its Day Rate Workers any guaranteed salary that was not subject to reduction based on the number of days worked.

99. Doyle knew that any "salary" the Day Rate Workers purportedly received was not "reasonably related" to their actual earnings.

100. Thus, Doyle knew its day rate pay scheme did not satisfy the "salary basis" test.

101. Doyle knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to its Day Rate Workers.

102. Nonetheless, Doyle uniformly misclassified its Day Rate Workers as exempt and refused to pay them overtime.

103. Doyle knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA (and IMWL).

104. Doyle knowingly, willfully, and/or in reckless disregard carried out its illegal day rate pay scheme that systematically deprived the Day Rate Workers of overtime for their hours worked over 40 in a workweek in violation of the FLSA (and IMWL).

### DOYLE'S FLSA VIOLATIONS WERE NOT DONE IN GOOD FAITH

105. Combs incorporates all other paragraphs by reference.

106. Doyle did not seek the advice of counsel regarding classifying its Day Rate Workers as exempt.

107. Doyle did not receive advice from counsel regarding classifying its Day Rate Workers as exempt.

108. Doyle did not rely on the advice of counsel in deciding to classify its Day Rate Workers as exempt.

109. Doyle did not seek the advice of counsel regarding paying its Day Rate Workers a day rate with no overtime.

110. Doyle did not receive advice from counsel regarding paying its Day Rate Workers a day rate with no overtime.

111. Doyle did not rely on the advice of counsel in deciding to pay its Day Rate Workers a day rate with no overtime.

112. Doyle did not investigate whether its day rate pay scheme satisfied the "salary basis" test.

113. Doyle did not investigate whether its Day Rate Workers were non-exempt.

114. Doyle's decision to misclassify its Day Rate Workers as exempt was neither reasonable nor made in good faith.

115. Doyle's decision not to pay its Day Rate Workers overtime was neither reasonable nor made in good faith.

### COUNT I
#### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
#### (FLSA COLLECTIVE)

116. Combs incorporates all other paragraphs by reference.

117. Combs brings her FLSA claim as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

118. Doyle violated, and is violating, the FLSA by employing non-exempt employees (Combs and the other FLSA Collective Members) in a covered enterprise for workweeks longer than

11

40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

119. Doyle's unlawful conduct harmed Combs and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

120. Accordingly, Doyle owes Combs and the other FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

121. Because Doyle knew, or showed reckless disregard for whether, its day rate pay scheme violated the FLSA, Doyle owes Combs and the other FLSA Collective Members these wages for at least the past 3 years.

122. Doyle is also liable to Combs and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

123. Finally, Combs and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
### (ILLINOIS CLASS)

124. Combs incorporates all other paragraphs by reference.

125. Combs brings her IMWL claim as a class action on behalf of herself and the other Illinois Class Members pursuant to FED. R. CIV. P. 23.

126. Doyle's conduct violates the IMWL (820 ILCS 105/1, *et seq.*).

127. At all relevant times, Doyle was subject to the IMWL because Doyle was (and is) an "employer" within the meaning of the IMWL. *See* 820 ILCS 105/3(c).

128. At all relevant times, Doyle employed Combs and the other Illinois Class Members as its covered "employees" within the meaning of the IMWL. *See* 820 ILCS 105/3(d).

129. The IMWL requires employers, like Doyle, to pay non-exempt employees, including Combs and the other Illinois Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 820 ILCS 105/4a.

130. Combs and the other Illinois Class Members are entitled to overtime wages under the IMWL.

131. Doyle violated, and is violating, the IMWL by failing to pay Combs and the other Illinois Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* 820 ILCS 105/4a.

132. Doyle's unlawful conduct harmed Combs and the other Illinois Class Members by depriving them of the overtime wages they are owed.

133. Accordingly, Doyle owes Combs and the other Illinois Class Members the difference between the rate paid and the proper overtime rate plus treble damages and monthly statutory damages at the rate of 5% per month in the amount of the underpayment. *See* 820 ILCS 105/12(a).

134. Finally, Combs and the other Illinois Class Members are entitled to recover their reasonable plus attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## JURY DEMAND

135. Combs demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Combs, individually and on behalf of the other Day Rate Workers, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

  b.  An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

  c.  An Order appointing Combs and her counsel to represent the interests of the Day Rate Employees;

  d.  An Order finding Doyle liable to Combs and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus liquidated damages in an amount equal to their unpaid wages;

  e.  An Order finding Doyle liable to Combs and the other Illinois Class Members for unpaid overtime wages owed under the IMWL plus treble damages and monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

  f.  A Judgment against Doyle awarding Combs and the other Day Rate Workers all their unpaid wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA and IMWL;

  g.  An Order awarding attorney's fees, costs, and expenses;

  h.  Pre- and post-judgment interest at the highest applicable rates; and

  i.  Such other and further relief as may be necessary and appropriate.

Dated: April 15, 2024

Respectfully submitted,

**WERMAN SALAS P.C.**

By: _/s/ Douglas M. Werman_
Douglas M. Werman
Maureen A. Salas
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone: (312) 419-1008
Fax:    (312) 419-1025
dwerman@flsalaw.com
msalas@flsalaw.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*_Pro hac vice applications forthcoming_

**ATTORNEYS FOR COMBS
& THE DAY RATE WORKERS**

15